NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| George SCIVOLETTI and Maryanne SCIVOLETTI, | |
| Plaintiffs, | Civ. No. 10-1778 |
| v. | OPINION & ORDER |
| JP MORGAN CHASE BANK, N.A., et al., | |
| Defendants. | |

THOMPSON, U.S.D.J.

INTRODUCTION

This matter comes before the Court upon Defendant JP Morgan Chase Bank, N.A.'s ("JP Morgan Chase") Motion to Dismiss [docket # 12] and Defendant U.S. Bank National Associates' ("U.S. Bank") Motion to Dismiss [13]. The Court has decided these motions upon consideration of the parties' written submissions, without holding oral argument. For the reasons given below, both motions are granted.

BACKGROUND

U.S. Bank filed a foreclosure action against Plaintiffs in the Chancery Division of New Jersey Superior Court in Monmouth County. That action was dismissed and closed on August 28, 2009, and thereafter Plaintiffs filed Counterclaims and a Third Party Complaint ("Complaint") on September 10, 2009. That document was transferred to the Law Division of the Superior Court and re-filed as a Complaint, commencing a new civil action. Defendants filed a Notice of Removal in this Court on April 7, 2010. On May 24, 2010, JP Morgan Chase and U.S. Bank filed motions to dismiss Plaintiffs' Complaint.

Plaintiffs make the following allegations in their Complaint. In December of 2005, the Scivolettis were looking to refinance their home in order to consolidate their debt and make some improvements to their house. (Compl. Facts ¶ 2.) They spoke with Jason Ferrante at JP Morgan Chase, who assured the Scivolettis that he could get them a loan with JP Morgan Chase and that the payments under the new loan would be about what they were already paying on their mortgage. (*Id.* ¶¶ 3-4.) Ferrante drew up a loan application for the Scivolettis, which—unbeknownst to the Scivolettis—contained false information, though the Complaint does not indicate precisely what this false information was. (*Id.* ¶¶ 5-6.) Thereafter, George Scivoletti signed two promissory notes with JP Morgan Chase for a total loan amount of $1,388,000, payable in monthly installments of $10,996.82. (*Id.* ¶¶ 7-9.) This far exceeded Mr. Scivoletti's existing monthly payments, so at the closing on this new mortgage, Mr. Scivoletti asked Ferrante about the payment levels. (*Id.* ¶¶ 9-10.) Ferrante assured Mr. Scivoletti that the loan could be refinanced in six months and that his payments would then be more in line with what he had been previously paying. (*Id.* ¶¶ 10-11.) There are no allegations as to whether or not Plaintiffs were, in fact, able to refinance their new mortgage six months after closing.

In connection with this mortgage transaction, Ferrante arranged to have the Scivolettis' house appraised by H. James Norman. (*Id.* ¶ 14.) Norman appraised the property at a value of $1,600,000, which was a significant inflation of the actual value of the property. (*Id.* ¶ 15-16.) If the house had not been appraised at this inflated value, the Scivolettis either would not or could not have entered into the loan transaction with JP Morgan Chase. (*Id.* ¶ 18.) Plaintiffs also allege that various disbursements listed on a "Settlement Statement" prepared in connection with the mortgage closing were not issued as listed, and that this may have deprived the Scivolettis of funds they should have received. (*Id.* ¶ 20.) Finally, they allege that JP Morgan

Chase failed to disclose the amount financed, the finance charge, and the annual percentage rate of the mortgage as required under the Truth in Lending Act.  (*Id.* ¶ 21.)

As a result of all this alleged misconduct, Plaintiffs allege that the mortgage they obtained "provided the Scivoletti's with no tangible net benefit and unnecessarily placed the Scivoletti's at high risk of foreclosure and loss of their home." (*Id.* ¶ 13.)  They seek rescission or reformation of the mortgage, restitution of value conferred on Defendants, damages—including punitive damages—and attorneys' fees.

## ANALYSIS

I. Standard of Review

A defendant may, in lieu of filing an answer, move to dismiss a complaint for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  By rule, a "claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Therefore, if a Complaint does not "show[] that the pleader is entitled to relief" it "fails to state a claim" and should be dismissed.

In order to show an entitlement to relief, a plaintiff must plead sufficient factual matter to enable a court to draw the reasonable inference that the defendant is liable for the alleged misconduct.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  As the Third Circuit has noted, this requires the Court to undertake a two-step analysis:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1949-50).  At step one, the Court sets aside any legal conclusions and "recitals of elements of a

cause of action." *Iqbal*, 129 S.Ct. at 1949. At step two, the Court accepts the remaining allegations as true and assesses whether or not they support a reasonable inference that the defendant is liable. *Id.* Rather than alleging facts that are "'merely consistent with' a defendant's liability," the complaint must allege facts that, if true, "give rise to an entitlement to relief." *Id.* at 1949-50 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). In other words, an inference of liability is not reasonable—and thus dismissal is required—if the factual allegations in the complaint are more likely explained by lawful behavior than unlawful behavior. *Id.* at 1950.

In performing this analysis, a judge may only assess the plausibility of the plaintiff's legal claims in light of the facts alleged. The judge may not assess the plausibility of the alleged facts themselves. The Court must accept well-pleaded facts as true (*id.*), even if "actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

Claims sounding in fraud must meet more stringent pleading standards. When alleging fraud, "a party must state with particularity the circumstances constituting fraud," although conditions of a person's mind, such as intent or knowledge, may be alleged more generally. Fed R. Civ. P. 9(b). "Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984)). The complaint should make clear "who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* (citing *Saporito v. Combustion Eng'g, Inc.,* 843 F.2d 666, 675 (3d Cir. 1988)). Plaintiffs are required to plead fraud with this specificity "in order to place the defendants on notice of the precise misconduct with which they are charged."

*Seville*, 742 F.2d at 791.

    II. <u>Common Law Fraud</u>

Under New Jersey law, a plaintiff bringing a claim of common law fraud must prove "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997) (citing *Jewish Ctr. of Sussex County v. Whale,* 86 N.J. 619, 624-25 (1981)). A mere promise to do something in the future, which goes unfulfilled, does not constitute fraud, but a promise to do something in the future which the promisor has no intention of keeping is an actionable misrepresentation. *Dover Shopping Ctr. v. Cushman's Sons, Inc.*, 63 N.J. Super. 384, 391 (App. Div. 1960).

Plaintiffs argue that Defendants are liable for three allegedly fraudulent statements—(1) Ferrante's statement at closing that Plaintiffs could refinance in six months and secure lower payments, (2) Ferrante's statement prior to closing that Plaintiffs' new loan payments would be substantially similar to their previous loan payments, and (3) putting an inflated value of Plaintiffs' property onto Plaintiffs' loan application.

Plaintiffs first argue that Ferrante's statement at closing that the loan could be refinanced six months later was a misrepresentation of a material fact. However, there are no allegations showing that this statement was actually false, as there are no statements in the Complaint concerning Plaintiffs' ability to refinance. Therefore, that statement cannot fairly be characterized as a misrepresentation. Plaintiffs have submitted a certification alleging that they were unable to refinance, but on a motion to dismiss the Court assesses the sufficiency of the plaintiff's claims as stated in the complaint itself.

Ferrante's statements prior to closing—where he first represented that Plaintiffs' new loan payments would be about the same to their previous loan payments—also cannot form the foundation of a common law fraud claim. Plaintiffs allege that they became aware of the higher loan payments at closing and asked Ferrante about them. Therefore, they cannot successfully show that they relied on the pre-closing statements in signing the closing documents, which expressly showed Plaintiffs' new loan payments. As reliance is an element of common law fraud, Plaintiffs' failure to allege facts showing reliance means that they do not state an adequate claim under Rule 8.

Finally, the allegations that JP Morgan Chase caused an inflated value of Plaintiffs' home to be put on their loan application will not sustain a claim for fraud because there are no allegations showing that Plaintiffs ever relied on this misrepresentation or that Defendants intended Plaintiffs to rely on that misrepresentation. Plaintiffs themselves allege that the inflated value was necessary for JP Morgan Chase to meet underwriting guidelines (Compl. Facts ¶ 17), suggesting that it was JP Morgan Chase, rather than Plaintiffs, that was intended to rely and did rely on the inflated value. Plaintiffs do not allege that their decision to take out a new mortgage on their home was prompted by their home appraising for $1,600,000; indeed the facts as alleged in the Complaint suggest that Plaintiffs decided to seek a new mortgage before the appraisal ever took place.

Since Plaintiff has not pled facts showing that Defendants committed common law fraud, the first count of the Complaint will be dismissed.

   III. New Jersey Consumer Fraud Act

To make out a claim under the New Jersey Consumer Fraud Act ("CFA"), a private party must show "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a

causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 743, 749 (2007) (citing *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.,* 192 N.J. 372, 389 (2007)).  Here, "unlawful conduct" refers to any act that has the "capacity to mislead," and it can take one of three different forms: "affirmative acts, knowing omissions, and regulation violations." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994).  When the unlawful conduct in question is a "knowing omission," a plaintiff also must prove intent.  *Id.*

     Again, Plaintiffs argue that Defendants are liable because of three different misrepresentations: (1) Ferrante's statements at closing concerning Plaintiffs' ability to refinance and (2) Ferrante's statements prior to closing where he said that Plaintiffs' new loan payments would be about equal to their previous loan payments, and (3) the inflated home appraisal.  As noted above, there are no allegations supporting an inference that Ferrante's statements at closing concerning Plaintiff's ability to refinance the loan were false.  Therefore, those statements will not support a claim under the CFA.  Ferrante's statements prior to closing will not support a claim under the CFA either because those claims do not bear a causal relationship with Plaintiffs alleged losses.  As noted above, Plaintiffs' allegations make clear that they were aware of the increased loan payments when they signed the loan agreement with JP Morgan Chase at closing. In other words, by the time they actually entered into their new mortgage, Plaintiffs were no longer under the impression that their new loan payments would be about the same as their prior loan payments.  Therefore, Ferrante's statements to that effect which occurred prior to closing cannot reasonably be considered a "cause" of Plaintiffs' decision to enter into the new loan agreement.

Lastly, Plaintiffs' allegation that Ferrante caused Defendant Norman to give the Scivolettis' house an inflated appraisal will not support a claim under the CFA because the Complaint does not adequately plead ascertainable loss. Plaintiffs argue that, but for Defendants' misrepresentations, they would not have signed an "unaffordable mortgage" that resulted in their defaulting. They draw this inference from their allegation in the Complaint that the refinancing "was detrimental . . . , provided no tangible net benefit and unnecessarily placed the Scivoletti's [*sic*] at high risk of foreclosure." (Compl. Facts ¶ 13.) The Complaint also alleges that "[h]ad the property appraised for its true value the Scivoletti's [*sic*] would not have or could not have entered into the transaction." (*Id.* ¶ 18.) These allegations leave it substantially uncertain what exactly the loss is that Plaintiffs suffered. The word "detrimental" is simply too vague to show any entitlement to relief. Similarly, the fact of a default or a foreclosure (neither of which is actually alleged in the Complaint) does not in itself indicate an ascertainable loss. Plaintiffs must show with greater clarity what value they are seeking to recover, and while this need not be stated in a specific dollar amount, the Complaint should give some indication as to what measure of damages is being claimed. *See Theidemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005) ("The certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable."). Only once an ascertainable loss is stated with some clarity is it possible to evaluate the third prong of a CFA claim—a causal link between unlawful act and ascertainable loss.

Since the Complaint does not successfully allege a claim under the CFA, this Court will dismiss Count 2 as against Defendant JP Morgan Chase.

IV. Truth In Lending Act

8

Defendants argue both that Plaintiffs' Truth in Lending Act ("TILA") claim is time-barred and that the claim is not pled with sufficient factual detail to meet the standards of Fed. R. Civ. P. 8(a).[1]

Whenever a consumer credit transaction creates a security interest in the consumer's home in favor of the lender, the consumer has the right to rescind the transaction until the lender delivers all "material disclosures" to the consumer. 15 U.S.C. § 1636(a); 12 C.F.R. § 226.23(a)(1) & (3). These "material disclosures" include "disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule," and various other items. 12 C.F.R. § 226.23 at n.48. The TILA creates a strict liability regime—a defendant who commits a violation is liable regardless of knowledge or intent. *Smith v. Fid. Consumer Credit Discount Co.*, 898 F.2d 896, 898 (3d Cir. 1990). If the lender never submits the required disclosures to the borrower, the borrower's right to rescind eventually expires three years after the consummation of the lending transaction. 15 U.S.C. § 1635(f). "To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram, or other means of written communication." 12 C.F.R. § 226.15(a)(2). Such notice is effective "when mailed, or when filed for telegraphic transmission, or, if sent by other means, when delivered to the creditor's designated place of business." *Id.* When a borrower exercises his or her right of rescission, the creditor must return any earnest money or downpayment to the borrower and terminate its security interest in the borrower's property within twenty days. 15 U.S.C. § 1635(b). After the creditor completes these obligations, the borrower must return the borrowed money to the creditor. *Id.*

---

[1] Defendants argue that Plaintiffs' TILA claims are subject to the heightened pleading standards under Rule 9, but the Court does not consider TILA to be a "fraud" claim, so only the Rule 8 pleading standards apply.

The loan transaction at issue in this case closed on January 25, 2006. Defendants argue that since Plaintiffs did not file their counterclaim in the foreclosure action (which was spun off as the Complaint in this action) until September 10, 2009, their right of rescission expired. Plaintiffs counter that they first raised the prospect of rescission in their answer to the foreclosure complaint on April 10, 2008. (*See* Notice of Removal, Ex. E ¶¶ 31-33.) The Plaintiffs' answer to the foreclosure complaint does not expressly state that the loan is being rescinded. However, it may be fairly inferred that Plaintiffs would not have discussed the possibility of rescission had they not intended to invoke this remedy. Therefore, the Court concludes that the TILA claim is not time-barred.

Defendants also argue that Plaintiffs' TILA claims should be dismissed because Plaintiffs have not alleged that they will be able to repay the borrowed money to Defendants. However, 15 U.S.C. § 1635(b) plainly requires the creditor return the property to the borrower before the borrower is obligated to return the borrowed money to the creditor, and neither the act nor its regulations require the borrower to make a showing of ability to repay. Therefore, a borrower need not prove its ability to repay in order to exercise its right of rescission, and he or she does not need to plead such facts in order to survive a motion to dismiss.

Under certain circumstances, this procedure could produce unfair results, allowing a borrower to rescind a lending agreement after having already dissipated the borrowed money. In light of this problem, TILA and its enacting regulations empower courts to modify the TILA rescission procedures on a case-by-case basis. In other words, this Court has the authority to enter an order conditioning Defendants' rescission obligation on Plaintiffs' repayment of borrowed funds. 12 C.F.R. § 226.23(d)(4); *see Yamamoto v. Bank of New York*, 329 F.3d 1167,

1170-73 (9th Cir. 2003).  It would be premature to decide this equitable issue at the pleadings stage.

However, Plaintiffs' TILA claim must be dismissed nonetheless because their TILA allegations are vague and conclusory.  As noted above, Plaintiffs have simply alleged that JP Morgan Chase "failed to disclose properly the amount financed, finance charge and annual percentage rate of the mortgage."  This allegation does not state a claim under Rule 8 because it is merely a legal conclusion and is consequentially disregarded for purposes of assessing whether or not Plaintiff has stated a claim.  While the Complaint identifies those particular charges that are alleged to have been improperly disclosed—the amount financed, the finance charge, and the annual percentage rate—it does not show what was "improper" about the disclosures, i.e., whether disclosures were somehow inaccurate or whether they were not made at all.  Without any facts to give context to the TILA claim, the Complaint does not sufficiently articulate "the 'grounds' on which the claim rests."  *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).  In their opposition brief, Plaintiffs give a lengthy factual narrative of precisely what is improper about Defendants' disclosures—far more, in fact, than would be required to pass muster under Rule 8.  However, to survive a motion to dismiss, the Plaintiffs must include these facts in the Complaint itself.  Therefore, this Court will dismiss Plaintiffs' TILA claim.

V. <u>Breach of Contract/ Breach of the Duty of Good Faith and Fair Dealing</u>

Count Four of the Complaint is subtitled "Breach of Contract," but the language used in the Count makes clear that Plaintiffs are actually claiming breach of the duty of good faith and fair dealing that arises incident to all contracts.  Breach of the duty of good faith and fair dealing is a different species of claim than breach of contract and has different elements.  The duty requires that "parties to a contract refrain from doing 'anything which will have the effect of

11

destroying or injuring the right of the other party to receive' the benefits of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224-25 (2005) (quoting *Palisades Props., Inc. v. Brunetti,* 44 N.J. 117, 130 (1965)). A plaintiff claiming breach of the duty of good faith and fair dealing must show that the defendant acted with "bad motive or intention." *Wilson v. Amerada Hess Corp.,* 168 N.J. 236, 251 (2001).

Plaintiffs contend that JP Morgan Chase breached the duty of good faith and fair dealing by failing to incorporate loan payments that were substantially similar to the Scivolettis' previous payments into the lending agreement. However, this argument misconstrues the substance of the duty of good faith and fair dealing, which requires that parties to an *existing* contract not do anything thereafter to impair the expected benefits under that contract. The act of creating a contract cannot be a breach of the duty of good faith and fair dealing because the expectations protected by that duty do not arise until *after* the contract is created.

Alternatively, Plaintiffs may be alleging that Ferrante's oral statement that the Scivolettis' new loan payments would be substantially similar to their previous loan payments ought to be incorporated into the parties' written contract. On at least one occasion, the Appellate Division of the New Jersey Superior Court has held that the duty of good faith and fair dealing "permits the inclusion of terms and conditions which have not been expressly set forth in the written contract." *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 257 (2002). However, a court will incorporate absent terms into a contract only in the situation "where the parties must have intended [the absent terms] because they are necessary to give business efficacy to the contract as written." *New Jersey Bank v. Palladino*, 77 N.J. 33, 46 (1978). Plaintiffs do not allege any facts or make any arguments showing why lower loan payments "are necessary to give business efficacy" to their loan agreement with JP Morgan Chase. Plaintiffs may have

believed, prior to the closing date, that their loan payments would not change after signing a new mortgage, but this belief in and of itself would not warrant rescinding or reforming the mortgage. Therefore, regardless of how the duty of good faith and fair dealing is construed, Plaintiffs do not state a claim that Defendants violated that duty.

VI. Negligence

Defendant JP Morgan Chase also moves to dismiss Plaintiffs' negligence claim. The elements in a claim for negligence are the existence of a duty that defendant owes plaintiff, the breach of that duty, injury to plaintiff, and the proximate causation of the injury by the breach. *Anderson v. Sammy Redd & Assocs.*, 278 N.J. Super. 50, 56 (App. Div. 1994). Defendant JP Morgan Chase argues that neither it nor Ferrante owed Plaintiffs any duty because "[u]nder New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316 (2002) (citing *New Mea Const. Corp. v. Harper*, 203 N.J. Super. 486, 493-94 (App. Div. 1985)). Plaintiffs do not oppose JP Morgan Chase's motion on this point. Therefore, the Court will dismiss Plaintiffs' negligence claim.

VII.   Aiding and Abetting Fraud

As written, the Complaint alleges claims for aiding and abetting against Defendants Ferrante, Norman, and Michael D. Pugliese for their role in JP Morgan Chase's fraudulent acts. (Compl. Count 5.) JP Morgan Chase is not alleged to have aided and abetted in any other party's fraudulent acts. Therefore, JP Mogan Chase's motion to dismiss is moot insofar as it asks this Court to dismiss aiding and abetting claims against it.

VIII.   Punitive Damages and Attorneys' Fees

Since Plaintiffs have failed to state any valid claims against JP Morgan Chase, there is no basis for their request for punitive damages and attorneys' fees. Accordingly, those claims will also be dismissed.

IX. <u>Claims Against U.S. Bank</u>

Plaintiffs' Complaint does not make any allegations against Defendant U.S. Bank. In their opposition to U.S. Bank's Motion to Dismiss, Plaintiffs explain that U.S. Bank is a proper defendant in this case because "it was assigned and currently holds Mr. and Mrs. Scivoletti's note and mortgage." As has been explained above, all facts necessary to state a claim must be pled within the Complaint itself. Therefore, the Complaint as written does not state any claims against U.S. Bank.

X. <u>Leave to Amend</u>

In their opposition brief, Plaintiffs request that, should the Court grant Defendants' motions to dismiss, they be given leave to file an amended complaint. Defendants have not objected to this request, and furthermore, when the Court dismisses a complaint for failure to state a claim, the ordinary course is to permit the plaintiff to file an amended complaint to cure pleading deficiencies. *District Council, 47 v. Bradley*, 795 F.2d 310, 316 (3d Cir. 1986). Therefore, this Court will grant Plaintiffs leave to file an amended complaint.

<u>CONCLUSION</u>

For the foregoing reasons, IT IS, this 25th day of June, 2010,

ORDERED that Defendant JP Morgan Chase's Motion to Dismiss [12] is GRANTED; and it is further

ORDERED that Defendant U.S. Bank's Motion to Dismiss [13] is GRANTED; and it is further

ORDERED that Plaintiffs' claims are DISMISSED without prejudice as against Defendants JP Morgan Chase Bank and U.S. Bank National Associates[2]; and it is further

ORDERED that any Amended Complaint must be filed within thirty days of the entry of this order.

>  */s/  Anne E. Thompson*
>  ANNE E. THOMPSON, U.S.D.J

---

[2] The Clerk is directed *not* to terminate these parties at this time, as it is anticipated that Plaintiff will file an amended complaint stating claims against JP Morgan Chase and U.S. Bank.